UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

| | |
|---|---|
| ANGELINA PIVARNICK, | 19 Civ. 5274 |
| Plaintiff, | COMPLAINT |
| -against- | PLAINTIFF DEMANDS A TRIAL BY JURY |
| THE CITY OF NEW YORK & JONATHAN SCHECHTER, | |
| Defendants. | |

----------------------------------------------------------------x

Plaintiff Angelia Pivarnick, by her counsel, The Law Office of Kevin Mintzer, P.C. and Harrison, Harrison & Associates, Ltd., complaining of defendants The City of New York (the "City") and Jonathan Schechter ("Schechter") (collectively "defendants"), alleges as follows:

NATURE OF CLAIM

1. This diversity action is brought to remedy sex discrimination, including sexual harassment, as well as retaliation for opposition to unlawful discriminatory practices, in violation of the New York City Human Rights Law, Administrative Code of the City of New York § 8-107 *et seq.* (the "NYCHRL").

2. Pivarnick is an Emergency Medical Technician for the City of New York. For more than a year, she was subjected to a sexually hostile work environment by two of her supervisors, both of whom are lieutenants within the New York City Fire Department's Bureau of Emergency Medical Services. The sexual harassment that Pivarnick experienced included repeated and unwelcome sexual advances, degrading comments about her body, vulgar sexual comments, inappropriate questions about her private relationships and, in one instance, the groping of an

intimate part of her body without her consent. Pivarnick summoned the courage to file internal complaints about both of these lieutenants with Fire Department's Equal Employment Opportunity office, and both of her complaints were sustained. However, since filing the internal complaints, the leadership of Pivarnick's station have subjected her to continued retaliation, including unjustified scrutiny of medical records related to injuries that Pivarnick sustained in the line of duty and baseless discipline for non-existent infractions.

3. Pivarnick seeks declaratory relief, compensatory and punitive damages, and other appropriate legal and equitable relief pursuant to the NYCHRL.

## PARTIES, JURISDICTION AND VENUE

4. The City of New York is a municipality. At all relevant times, The City was plaintiff's "employer" within the meaning of the NYCHRL.

5. Jonathan Schechter is a Lieutenant in the New York City Fire Department ("FDNY"), Bureau of Emergency Medical Services ("EMS"). On information and belief, Schechter is a Citizen of the State of New York.

6. Pivarnick is a 33-year-old woman. She is a citizen of the State of New Jersey.

7. This Court has jurisdiction over plaintiff's claims pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.

8. Pursuant to § 8-502(c) of the NYCHRL, plaintiff will serve a copy of this Complaint on the City of New York Commission on Human Rights and the Corporation Counsel of the City of New York.

9. As a substantial part of the events giving rise to the claims occurred within the Eastern District of New York, venue is proper within this District pursuant to 28 U.S.C. § 1391(a)(2).

## FACTUAL ALLEGATIONS

Pivarnick's Background and Employment with FDNY-EMS

10. Before Pivarnick pursued a career as an EMT, she had worked for several years in the entertainment industry with a focus on reality television programs. In 2009 and 2010, Pivarnick was an original cast member of the MTV television show *The Jersey Shore*. In 2011, she appeared on the VH1 program *Couples Therapy*.

11. For the next several years, Pivarnick made public appearances and she worked on smaller entertainment projects and in non-entertainment positions. However, Pivarnick's long-held aspiration was to become an Emergency Medical Technician ("EMT"). Pivarnick's aunt was an EMT and she also had firefighters in her family. Pivarnick believed it would be a rewarding job and would give her the opportunity to help people.

12. In 2014, Pivarnick decided to pursue her dream, and she began attending school for EMS training at the Training Institute of for Medical Emergencies and Rescue (TIMER) in Staten Island. This program lasted for three and one-half months and required Pivarnick to participate in instruction and training for a minimum of four days per week. At the conclusion of the program in early 2015, Pivarnick received an EMS certification, which qualified her to apply for an EMS position with the FDNY.

13. Pivarnick was hired by EMS to be an EMT in April 2016. After she was hired, Pivarnick received four months of training to be an EMT at the FDNY-EMS training academy in Fort Totten, Queens.

14. Pivarnick successfully completed her training and, in or about August 2016, she was assigned to work at the FDNY-EMS station in Rossville, Staten Island.

15. Pivarnick successfully worked as an EMT through late November 2016. Although Pivarnick was new to the job, she performed well and found it rewarding.

16. However, on November 23, 2016, Pivarnick was injured on the job when she responded to an emergency call and was required to move a patient who weighed approximately 450 pounds. Pivarnick is five feet and one inch tall, and thin. She suffered a severe back injury that prevented her from working as an EMT until the summer of 2017, when she returned to full duty.

17. Pivarnick was re-injured in late November 2017 when she was lifting a patient on a stretcher and it malfunctioned. Following this incident, she was diagnosed with a bulged disc and chronic neck pain. Pivarnick was out of work entirely until March 2018, when she was then reinstated to light duty. Light duty meant that Pivarnick spent her work shifts at the Rossville Station.

Pivarnick is Sexually Harassed by Lieutenant David Rudnitzky

18. While on light duty and spending her work tours at the Rossville Station, Pivarnick was sexually harassed by Lieutenant David Rudnitzky ("Rudnitzky"), who had supervisory authority over her.

19. Because the program *Jersey Shore* was revived in 2018, and Pivarnick participated in several episodes of the new season, Rudnitzky apparently believed that he could speak to Pivarnick at work in sexually graphic and vulgar terms. These comments were unwelcomed by Pivarnick and were not reciprocated.

20. Rudnitzky frequently made sexual comments to Pivarnick, both in front of Pivarnick's co-workers and when no one else was present. He often inquired about Pivarnick's sex life, asking whether Pivarnick had "fucked [her] man," or similar questions.

21. Rudnitzky also insinuated, falsely, that Pivarnick was promiscuous and that she was having sex with colleagues at work. On one occasion, when a male EMT co-worker of Pivarnick left the room, leaving her alone with Rudnitzky, he said: "Make sure no fucking today."

22. In or about the middle of March 2018, Rudnitzky asked Pivarnick, in front of one of Pivarnick's male EMT colleagues: "How many guys on Jersey Shore have you fucked?"

23. Having been humiliated in front of her colleague and unwilling to further endure Rudnitzky's abuse, on or about April 11, 2018, Pivarnick filed a complaint with the FDNY's Equal Employment Opportunity ("EEO") Office concerning Rudnitzky's sexual harassment of her.

24. On information and belief, one or more Pivarnick's male co-workers confirmed to the EEO Office that Rudnitzky had made sexually inappropriate comments to her.

25. After Pivarnick complained about Rudnitzky's conduct and Rudnitzky was interviewed by the EEO Office, Rudnitzky disclosed Pivarnick's complaint to other EMS employees, which was a violation of the confidentiality rules of the FDNY and caused Pivarnick further distress.

26. On July 13, 2018, the FDNY's EEO Office sent Pivarnick a letter stating that it had found "sufficient credible and corroborating evidence that Lieutenant David Rudnitzsky made an inappropriate comment of a sexual nature to you, and that he breached the confidentiality of the investigation by disclosing your EEO with a witness."

27. The letter from the EEOC Office further stated that Rudnitzsky would be referred to the FDNY's Bureau of Investigation and Trials for appropriate discipline and that he would be "counsel[ed]" about workplace behavior under the EEOC policy.

28. However, notwithstanding these findings, on information and belief, Rudnitzsky has not suffered any significant consequences for his treatment of Pivarnick, and he continues to work as a Lieutenant at the Rossville Station.

<u>Pivarnick is Sexually Harassed by Lieutenant Schechter</u>

29. Starting shortly after being transferred to the Rossville Station, Pivarnick was also subject to sexual harassment by Lieutenant Schechter, who at all relevant times had supervisory authority over Pivarnick.

30. Schechter incessantly subjected Pivarnick to unwelcome sexual advances, as well as comments about her body and physical appearance. Specific examples of Schechter's harassment include the following:

- On August 21, 2017, in response to Pivarnick telling Schechter that she was suffering from back pain, he texted her: "At 1pm you tell me where and I'll come make you feel better lol"

- On August 29, 2017, Schechter texted to Pivarnick that "And you still owe me something naughty . . . and my offer that I've made to you *time and time again* still stands." (Emphasis added) This "offer" referred to Schechter giving Pivarnick a massage and/or having sex with Pivarnick, despite Pivarnick having communicated to Schechter that she was not interested in having a physical relationship with him.

- On September 3, 2017, Schechter texted to Pivarnick: "And just so you know … I have not fucked anyone from EMS yet . . . let alone the the [sic] station." Schechter further texted to Pivarnick that a particular woman at the station "isn't my type at all" and "the other person as much as I love to enjoy her, she won't give in." Schechter subsequently made clear that the person who "won't give in" was Pivarnick. He also wrote to Pivarnick that

6

she "was the only one I text because I love your ass lol" "And I still owe you a massage lol."

- On September 5, 2017, Schechter texted Pivarnick: "and btw…you still owe me something naughty…just thought I'd remind you." To which she did not respond. Schechter then texted her: "I love how quickly you get silent" (referring to how Pivarnick frequently ignored or disregarded such comments). Schechter later commented that same day: "I'm relentless when I see something I like."

- On September 15, 2017, Schechter texted Pivarnick: "Your ass looked amazing and I wish I wasn't working or in uniform because I definitely would've kissed those amazing lips."

- On October 1, 2017, Pivarnick mentioned to Schechter that she had a boyfriend. In response Schechter texted her: "Seeing as you have a bf for now . . . I will no longer pursue you."

- On February 17, 2018, Schechter texted to Pivarnick: "One day We'll go for drinks and I'll give you that massage I owe you."

- On March 9, 2018, Schechter acknowledged Pivarnick's refusal to submit to his repeated advances, writing: "You been telling me no for over a year."

- On March 9, 2018, Schechter wrote to Pivarnick that the messaging app WhatsApp was superior to Apple's iMessage app, in part because you can erase messages that you send. Schechter elaborated: "Like I can tell you how much I want you and then delete it. If you saw it then great and if not I don't feel like it's just lingering."

- On March 22, 2018, Schechter texted to Pivarnick: "I'd rather text you and tell you that I want you and will have you one day than subject myself to jersey shore shit."

7

31. At times when Schechter's sexual attention became particularly overbearing, Pivarnick would try to withdraw or act less friendly to him. However, when Pivarnick did so, Schechter would use his supervisory authority over her and give her unfavorable assignments, such as clean up duty, or he would show up at her calls for no apparent purpose other than to scrutinize her work. Therefore, Pivarnick tried to maintain a friendly relationship with Schechter, dodging his comments on her body and her relationship.

32. On May 3, 2018, Schechter texted to Pivarnick: "I'm going to make you one day" and "smoking is bad! I can relieve your stress in much more efficient ways." Pivarnick asked Schechter if he wanted coffee, and he replied: "No I want you!"

33. Later that day, when Pivarnick met Schechter in a parking lot outside of the station, he grabbed and squeezed her buttocks, putting his hand so low that he also made contact with her vaginal area. Pivarnick made it clear that he should never touch her. After she left, he texted her: "That ass! If you only knew the thoughts in my mind."

34. After Schechter groped her without consent, Pivarnick decided that she had no choice but to report his conduct. Pivarnick also believed, based on what the FDNY EEO office told her, that Schechter was sexually harassing other women in the Rossville Station.

35. Accordingly, on May 17, 2018, Pivarnick made a complaint with the FDNY EEO office that Schechter had created a sexually hostile work environment.

36. On March 25, 2019, the EEO Officer wrote a letter to Pivarnick stating, in relevant part: "Based on our review and evaluation of all the evidence and information obtained during the course of the investigation, the EEO Office finds sufficient credible and corroborating evidence that Lieutenant Schechter engaged in the discriminatory conduct alleged."

37. The letter further stated that Pivarnick's complaint "was referred to the Bureau of Investigations and Trials ("BIT") for appropriate disciplinary action. Once BIT has prosecuted or settled the disciplinary charges, the EEO Office will communicate that final resolution." To date, however, Pivarnick has not been informed by the EEO Office what action has been taken against Schechter.

Pivarnick is Retaliated Against Because of Her Sexual Harassment Complaints

38. After Pivarnick filed internal EEO complaints concerning Rudnitzsky and Schechter, she has been subjected to retaliation by the leadership of EMS' Rossville Station. These incidents of retaliation, individually and collectively, have been intended to punish Pivarnick for complaining of sexual harassment and to dissuade Pivarnick and other EMS employees from making such complaints in the future.

39. In October 2018, Pivarnick learned that Rudnitzsky had not provided medical documentation concerning her injuries that she had left for him to share with Captain Brian Murphy, who was then the commanding officer of the Rossville Station. On information and belief, on more than one occasion, Rudnitzsky intentionally withheld this documentation from Murphy in order to cause Pivarnick to be disciplined.

40. On or about October 25, 2018, Pivarnick filed a complaint about Rudnitzsky's retaliatory conduct with the EEO office. However, on information and belief, the EEO office failed to take any action against Rudnitzsky for this conduct.

41. On January 11, 2019, Captain Brian Murphy, who was then the commanding officer of the Rossville Station, sent Pivarnick a memorandum stating that he was going to be "conducting an audit of your medical documentation from 02/1/18 to 07/31/18" and asking Pivarnick to provide copies of her medical documentation during that time. However, Pivarnick had previously

provided EMS with all relevant medical documentation related to her injuries for that period. On information and belief, no other EMS employee at Rossville Station who had sustained a line of duty injury was subject to similar treatment. The "audit" of Pivarnick's medical records was without justification and was intended to retaliate against her.

42. On other occasions, while Pivarnick has been on light duty, Captain Murphy and other Lieutenants asked Pivarnick for notes from her physician to substantiate short absences while male colleagues who did not complain of harassment had days off approved without being required to submit a doctor's note.

43. On January 24, 2019, Lieutenant Debbie Mellon made a disciplinary complaint about Pivarnick for allegedly not informing another Lieutenant on duty that she had to leave before the end of her shift. Mellon further alleged that Pivarnick was not wearing her uniform and spoke disrespectfully to her. These allegations were false. On information and belief, Mellon is friends with Rudnitzsky and/or Schechter, and she sought to retaliate against Pivarnick for complaining of their sexually harassing behavior.

44. In or about March 2019, Captain Linda Parlamenti became the new commanding officer of the Rossville Station. Since she has assumed those duties, she engaged in a series of retaliatory actions against Pivarnick, including: 1) asking Pivarnick unreasonable and intrusive questions about her health, which Parlamenti had no reason to do; 2) refusing to assign Pivarnick to the tour schedule that Pivarnick had previously been assigned to prior to her injury, even though others who returned from their injuries normally returned to their prior tour schedules; and 3) threatening to reassign Pivarnick from the Rossville Station. On information and belief, Parlamenti is aware of Pivarnick's prior EEO complaints and has retaliated against her because of those complaints.

FIRST CAUSE OF ACTION

Gender Discrimination Under NYCHRL

(Against all Defendants)

45. Plaintiff repeats and realleges paragraphs 1-44 as if fully set forth herein.

46. By the acts and practices described above, defendants discriminated against plaintiff in the terms and conditions of her employment on the basis of her gender, including creating a sexually hostile work environment, in violation of the NYCHRL.

47. Defendants acted intentionally and with malice and/or reckless indifference to plaintiff's statutory rights.

SECOND CAUSE OF ACTION

Retaliation Under NYCHRL

(Against Defendant City of New York)

48. Plaintiff repeats and realleges paragraphs 1-44 as if fully set forth herein.

49. By the acts and practices described above, defendant City of New York retaliated against plaintiff because she opposed unlawful discrimination, in violation of the NYCHRL.

50. Plaintiff is now suffering and will continue to suffer monetary damages and damages for mental anguish and humiliation as a result of defendant's retaliatory acts.

51. Defendant acted intentionally and with malice and/or reckless indifference to plaintiff's statutory rights.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that this Court enter an award:

(a) Declaring the acts and practices complained of herein in violation of the NYCHRL;

(b) permanently restraining these violations;

(c) directing defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect plaintiff's employment opportunities;

(d) directing defendants to place plaintiff in the position she would be in but for defendant's discriminatory and retaliatory treatment of her, and to make her whole for all earnings she would have received but for defendant's discriminatory and retaliatory treatment, including, but not limited to, wages, bonuses, and other lost compensation and benefits;

(e) awarding plaintiff compensatory damages for her emotional distress and humiliation;

(f) awarding plaintiff punitive damages against defendant Schechter;

(g) awarding plaintiff pre-judgment and post-judgment interest, as well as reasonable attorneys' fees and the costs of this action;

(h) awarding plaintiff damages relating to adverse tax consequences; and

(i) awarding such other and further relief as the Court deems necessary and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury in this action.

Dated: New York, New York
      September 16, 2019

                                  THE LAW OFFICE OF
                                KEVIN MINTZER, P.C.

By: _____
     Kevin Mintzer
     1350 Broadway – Suite 1400
     New York, New York 10018
     Tel: (646) 843-8180
     km@mintzerfirm.com


HARRISON, HARRISON & ASSOCIATES, LTD
By: David Harrison
110 State Highway 35, Suite 10
Red Bank, New Jersey 07701
Tel: (718)799-9111
dharrison@nynjemploymentlaw.com

Attorneys for Plaintiff Angelina Pivarnick